VALLEY STREAM LAWNS, INC., Respondent, *v.* STATE OF NEW YORK, Appellant.  (Claim No. 33274.)

Third Department, November 13, 1959.

*Louis J. Lefkowitz, Attorney-General (Julius L. Sackman* and *Paxton Blair* of counsel), for appellant.

*Dowsey, Capobianco & Dowsey (David Marcus* of counsel), for respondent.

*Per Curiam.* The main factual problem presented on this appeal by the State from an award based on land appropriation is whether the cost of the future subdivision and development of the land as found by the court should have been considered and offset in the finding of damage. The land taken was undeveloped, but was located in a rapidly growing area of Nassau County and was shown to be suitable for subdivision into building lots.

It was actually zoned by a village zoning authority for one-acre lot development, but the proof suggests that a more suitable and more profitable subdivision would have been in lots of one-third or lots of one-half acre. The judgment of the Court of Claims is based on values reflecting one-half acre lot zoning, as though that zoning change had actually been accomplished.

A real estate expert called by claimant testified that if the land here in issue were divided into 62 half-acre lots, such lots then would be worth $8,500 each, totalling $527,000; and into six one-acre lots such lots would be worth $60,000, a total of $587,000. Deducting $11,200 as the value of the land not taken by the State, his calculation of the value of the land taken was $575,800.

This was exactly the amount awarded to the claimant in the judgment of the Court of Claims, so that it is clear the court accepted fully and followed precisely this witness' opinion of value.

This real estate expert testified that his estimate of $8,500 value for each half-acre plot was based on the market value of the property " subdivided for one-half acre building plots ", and " on the use " of the property " for 62 one-half acre building plots ".

But this land was not then zoned for use of one-half acre lots and it certainly was not then physically subdivided for " use " as such lots. Claimant itself offered proof by an engineer that the cost of laying out roads, drainage, grading and other physical changes to meet the plan described in a map showing 62 one-half acre and six one-acre plots, would be $143,000, which would " be necessary for " the subdivision. The real estate appraiser seems to have examined this map as part of the basis of his testimony on value.

The Court of Claims in response to the claimant's own request to find made a finding that the cost of completely setting up and subdividing the land in this way was $143,000.

There are, as claimant argues in its brief in response to the State's emphasis on this point, some places in the real estate expert's testimony from which it may be deduced that his opinion of value referred to the undeveloped land just as it was taken by the State.

For example, he testified in general form that the value of the land " prior to the taking " was $750,000; but it is clear that he reached this conclusion of over-all value on the basis of the " highest " utility value of a subdivision of 100 plots at $7,500 each, and the Court of Claims did not find this, but accepted a set of values projected by this witness on a specific map showing a specific subdivision largely comprised of one-half acre plots.

Much of the other testimony of this witness to which claimant refers us to show he was dealing with the land as it actually was, rather than as it would be when improved, is concerned with the witness' contention that although he was taking into consideration the probability of rezoning to permit more lots to be laid out, he was actually valuing the property as it was then zoned for one-acre lots with the probability of down-zoning affecting the market.

There are, of course, cases where the actual market value of the land which it is proposed to develop is clearly established without dependence upon the development as an accomplished fact. (Cf. *Hazard Lewis Farms* v. *State of New York*, 1 A D 2d 923.) But in making a review on the facts in this case we are of opinion the value at the time of taking was so closely tied in to the value of the proposed improvement when actually accomplished, including a change in zoning which depended on a

future decision of public authority, that credit must be allowed for the cost of the improvement.

This seems to be the general rule of damage; and it is a rule grounded in good sense (*State* v. *Tedesco,* 4 Utah 2d 248). See, also, generally on the subject *United States* v. *3,544 Acres of Land* (147 F. 2d 596) and *Matter of Simmons* (117 N. Y. S. 64).

The theory of damage in this case essentially is that the smaller the subdivisions into which the acreage taken could, within reasonable limits, be divided the more valuable it would be. But any such theory must take into consideration the rising cost of such subdividing, since without considering this hard reality, the value could be inflated by the mere abstract process of division and multiplication.

Since the claimant itself proved this cost as part of its case, and since the court found such costs to be as the claimant proved them; and since the real estate expert's testimony of value was closely related to, and apparently depended on, the subdivision as thus projected and described in claimant's proof, on this record we think due credit must be given for the cost of making the improvement.

The State complains in its brief that the cost of such improvements as found is incomplete and it would actually be higher than $143,000, as found; but the State offered no precise proof on this subject and the court was justified in accepting the amount established by claimant.

The State also contends that the Court of Claims was not warranted as a matter of law in accepting a theory of damage based on a rezoning which depended on future official action and which had not been made. We think there is sufficient in this record to indicate that the real estate appraiser was estimating the actual market value of land zoned for one-acre subdivision with the effect on the market of a probability of rezoning to one-half acre plots. (Cf. *Matter of Village of Garden City,* 9 Misc 2d 693, affd. 4 A D 2d 783.)

Such probabilities, as well as the probability of industrial and residential growth or changes in a community, may be shown to have an actual effect on an existing market. The fact they may not actually happen is not to say this possibility does not influence the market.

If the judgment is modified to reflect the cost of making the lots marketable, the award to the claimant would be $432,800, which would be some $72,800 in excess of the State's appraisal and the value as stated by the State's expert witness.

The judgment should be modified on the law and the facts, and the finding of damage to claimant fixed at $432,800, and as thus modified the judgment should be affirmed, without costs.

Foster, P. J., Bergan, Coon, Gibson and Reynolds, JJ., concur.

Judgment modified on the law and the facts, and the finding of damage to claimant fixed at $432,800 and as thus modified the judgment is affirmed, without costs.

Settle order.