ANTHONY M. DONALOIO et al., Appellants-Respondents, v STATE OF NEW YORK, Respondent-Appellant. (Claim No. 61773.)

Third Department, March 1, 1984

**APPEARANCES OF COUNSEL**

*Joseph C. Shapiro* and *William K. Atchinson, Jr.,* for appellants-respondents.

*Robert Abrams*, Attorney-General (*Dennis Hurley* and *Peter J. Dooley* of counsel), for respondent-appellant.

OPINION OF THE COURT

KANE, J. P.

Claimants are the owners and operators of the Homestead Restaurant, located on the northerly side of New York State Route 7 at its intersection with New York State Route 28 in Colliersville, Otsego County, some five miles east of the City of Oneonta. They purchased the premises on November 16, 1973 for a total sum of $149,500, which included the bar and restaurant facilities, two apartments on the second floor and approximately 20,000 square feet of blacktop parking area situated on 1.3 acres of land. The sewage disposal system for the restaurant originated along the easterly side of the buildings, consisting of a 750-gallon grease trap and three separate connecting septic tanks. Sewage was then funneled easterly under New York State Route 28 into a sand filtration bed and leaching field located on lands of a third party, through a chlorinator and then piped easterly into the Susquehanna River. Permits from appropriate governmental authorities existed to pipe sewage under Route 28 and to discharge treated effluent into the Susquehanna River. Although the drainage and filtration system across Route 28 was not on claimants' property, as grantees of the restaurant property, they became owners of a sewage flow easement and filtration system for the restaurant, which they were required to maintain and could relocate at their own cost and expense.

After acquiring title to the premises, claimants found it necessary to expend $30,000 for repairs and improvements to the building and replacement of restaurant equipment in order to continue operations. They also changed the style and cuisine of the restaurant, which resulted in a dramatic increase in gross receipts, i.e., from $285,000 in 1974 to $620,000 in 1978.

On October 12, 1977, the State of New York appropriated the permanent sewage flow easement owned by claimants as part of a taking for highway improvement at the intersection of Routes 7 and 28. At the time of the trial of the within claim, August, 1980, the appropriated sewage

system was still being used by claimants. There was testimony by a representative of the Department of Transportation that actual construction at the site of the taking was three to five years in the future.

Both claimants' and the State's appraisers testified that the highest and best use of the property prior to the appropriation was as a restaurant with apartments. After the appropriation, claimants' appraiser, accepting engineering testimony for claimants that only a limited sewer system could be built on the property with a capacity of 30% of the existing system, found the highest and best use to be residential, with a possible craft shop on the first floor. The State's appraiser found the highest and best use unchanged and assumed that the existing sewage system could be replaced with an equivalent system on claimants' land, as suggested by engineers retained by the State.

The trial court found the highest and best use unchanged, accepting as feasible the State's engineer's proposal of an on-site sand filtration system with a polyethylene barrier under the sand filter bed to prevent possible contamination of the water supply on the premises, which was a driven well in the basement of the restaurant some 133 feet down grade from the proposed filter bed. As the trial court noted, this new system contemplated that treated effluent would be funneled into a State constructed and maintained catch basin and then carried by a drainage system to be constructed by the Department of Transportation into the Susquehanna River.

In awarding damages, the trial court found a before value of $246,500, considering claimants' appraiser's before value of $481,000 and the State's appraiser's before value of $167,500. It found an after value of $176,500. The award for damages was broken down as $10,000 for direct taking, $19,800 as a cost-to-cure, namely, the cost of the new on-site sand filtration system, and $60,000 in consequential damages to the remainder, for a total award of $89,800, with interest from the date of taking.

■ The trial court's careful examination of the conflicting expert testimony on the feasibility of the proposed on-site replacement filtration system and its findings in relation thereto provides a solution to a vexing problem. It is,

at first blush, appealing, but upon closer examination, the proposed solution does violence to certain basic rules of law in the field of eminent domain.

■■ Where there is a partial taking of land, the measure of damages to which a claimant is entitled is the market value of the entire tract and improvements before the taking, less the value of the remainder after the taking (*Acme Theatres v State of New York,* 26 NY2d 385). This rule also applies when the partial taking involves an easement (see *Cummings v State of New York,* 62 AD2d 1084, mot for lv to app den 44 NY2d 648, mot to dismiss app granted 44 NY2d 948). The prospective expenditures necessary to cure a condition resulting from an appropriation are not a measure of damages, but are only an aid in determining the difference in the before and after value of the property (*Enmac Realty Corp. v State of New York,* 38 AD2d 650). Here, the trial court accepted the State's appraiser's testimony and found no change in the highest and best use of the property after the appropriation, thus rejecting the testimony of claimants' appraiser on that issue, although it accepted much of claimants' appraiser's reasoning as to before value. The trial court then, concomitantly, rejected the after value of claimants' appraiser, as well as the State's appraiser's determination of damages, which was limited to a cost-to-cure. Consequently, there was no range of testimony as to after value. Moreover, since the trial court rejected claimants' engineering testimony as of little probative value, and since its award of damages and determination of after value were both in excess of those set forth by the State's appraiser, the award is outside the range of expert testimony. To be accepted, therefore, the award and its various components must be supported by other evidence and sufficiently explained by the court (*Spyros v State of New York,* 25 AD2d 696, mod on other grounds 25 AD2d 913). Additionally, under these circumstances, the trial court's award, as well as its constituted elements, if at variance with the testimony of the remaining expert, or the expert whose opinion as to highest and best use corresponds with that found by the court, must be supported by other evidence and sufficiently explained by the court (*Vic's Automotive Servs. v State of New*

*York,* 91 AD2d 1115; *De Vries v State of New York,* 38 AD2d 866; *Enmac Realty Corp. v State of New York, supra; Camp Bel-Aire v State of New York,* 34 AD2d 867).

■ Here, the trial court found a before value for the property, determined direct damages, assigned consequential damages on a purely subjective and speculative basis of limitation on future expansion of the restaurant business, then subtracted the total amount from the before value to obtain an after value of $176,500. It then added to the direct and consequential damages so ascertained a cost-to-cure to arrive at the total award for damages. We find this an improper method of computing damages. The preferable measure of damages is the so-called before and after rule which measures damages as the difference between the fair market value of the whole before the taking and the fair market value of the remainder after the taking (*Acme Theatres v State of New York, supra; Baker v State of New York,* 36 AD2d 881). Second, by making an award for the direct taking of the sewage filtration system and then assessing an amount for a cost-to-cure, the trial court is essentially providing for a double recovery.

We also must reject the trial court's concept of a "partial cure" as found in these circumstances. It is clear from the testimony that the proposed cure, being an on-site sand filtration system, requires a discharge of effluent through facilities provided, or to be provided, by the State in order to be discharged into the Susquehanna River. Obviously, this requires the use of land outside the subject property, as well as permits from governmental authorities, a concept which has consistently been rejected by the courts of this State in determining consequential damages (see *Matter of County of Suffolk [Arved, Inc.],* 63 AD2d 673, 674; *Campbell v State of New York,* 39 AD2d 615, affd 32 NY2d 952; *Gluckman v State of New York,* 37 AD2d 870; *St. Patrick's Church v State of New York,* 30 AD2d 473). Moreover, there is merit in claimants' argument that the proposed cure in discharging sewage effluent into a storm sewer violates the directive contained in the current "Highway Design Manual" issued by the Department of Transportation, the very department claimants must ultimately rely upon for the proposed cure.

We do, however, believe that this matter may be resolved on the present record and the findings of the trial court, with certain modifications. Initially, the before value, as found by the court, is within the range of expert testimony. Although the trial court rejected claimants' appraiser's use of the income approach in arriving at the before value, its finding is supported by other testimony in the record. Since we have concluded that the "partial cure" theory is unavailing, the State's appraiser's conclusion of highest and best use after the taking must also be rejected, which would result in no range of testimony as to after value, unless there is other evidence in the record to support a determination of after value (*De Vries v State of New York*, 38 AD2d 866, *supra.*). We find such evidence in the testimony of claimants' appraiser and accept his determination of after value, which, in our view, results in a proper valuation for the highest and best use of the subject premises as an apartment and possible craft shop.

In arriving at an after value of the subject premises in the sum of $53,500, claimants' appraiser used both the market data and income approach. Both methods of valuation supported each other and resulted in the same opinion as to after value. It was his view that the market data approach represented the best and strongest indication of after value of the subject property. We agree. The comparable sales used were comparable. They were in the immediate area between the subject property and the City of Oneonta and, with adjustments, present an acceptable determination of after value of the land, buildings and improvements, to which he added the salvage value of the restaurant fixtures (see *Matter of Estate of Taylor v State of New York*, 39 AD2d 984; *Baker v State of New York*, 36 AD2d 881, *supra*). We recognize that the subject premises are still operating as a restaurant, but this is only by sufferance of the State for, once construction is undertaken, the restaurant may well be "doomed", as observed by the trial court. Just compensation must be measured as of the date of taking, October 12, 1977, for that is the date the amount of damages became fixed (*Chester Litho, Inc. v Palisades Interstate Park Comm.*, 27 NY2d 323; *Wolfe v State of New York*, 22 NY2d 292). In measuring damages

after a partial taking, it is not relevant when the condemnor plans to use the property taken, but rather what the condemnor acquires the right to do (*Manlius Center Rd. Corp. v State of New York,* 49 AD2d 685).

Accordingly, we find that claimants are entitled to damages in the sum of $193,000, based upon a before value of $246,500, as found by the trial court, and an after value of $53,500, as explained herein; said damages being broken down as $10,000 for the direct taking and $183,000 as consequential damages to the remainder.

The judgment should be modified, on the law and the facts, by increasing the award herein to the sum of $193,000, with appropriate interest, and, as so modified, affirmed, with costs to claimants.

MAIN, MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur.

Judgment modified, on the law and the facts, by increasing the award herein to the sum of $193,000, with appropriate interest, and, as so modified, affirmed, with costs to claimants.