■ FRANKLYN R. AKEY et al., Respondents, v STATE OF NEW YORK, Appellant. (Claim No. 65244.) — Mahoney, P. J. Appeal from a judgment in favor of claimants, entered March 14, 1984, upon a decision of the Court of Claims (Murray, J.).

On June 13, 1978, the State of New York, pursuant to Highway Law § 30, appropriated .971± acre of property owned by claimants in the Town of Plattsburgh, Clinton County. The parcel taken was about 1,800 feet long and 23 to 24 feet wide.

Near the easterly end of the property there was a parcel about 750 feet in length and 140 feet deep. At the westerly end of the property there was a parcel 675 to 750 feet long and about 290 feet deep. Between these two parcels there was a strip 425 feet long and about 45 feet deep. Each of the parcels is located on the north side of State Route 3, approximately one-half mile west of the City of Plattsburgh in a primarily commercial area. The appraisers for both litigants agree that these parcels are the ones affected by the appropriation.[*] Prior to the taking, Route 3 had been altered and claimants' property had been partially filled along that part of the property which bordered the highway. At the close of the case, the Court of Claims awarded claimants $92,020 plus interest to compensate them for the taking of their property. Judgment was entered accordingly and this appeal by the State ensued.

Both claimants' appraiser and the State's appraiser found that the highest and best use of the filled portion of the property before the appropriation was commercial development. Claimants' appraiser divided the property into two units; economic unit 1 was road level commercial land and economic unit 2 was below grade, requiring extensive fill to develop. To enhance the value of the property as a whole, claimants' appraiser concluded that the highest and best use for the parcel would be realized by dividing the property so as to take advantage of its road frontage. Accordingly, he subdivided the property into seven smaller sites with 250-foot frontages. By analyzing similar parcels, claimants' appraiser assigned a $500 per frontage foot valuation to sites Nos. 1, 2 and 3, $250 per frontage foot valuation to site No. 4, and $600 per frontage foot valuation to sites Nos. 5, 6 and 7. The valuation differed according to the depth of the individual sites. Therefore, the gross sales price, before appropriations, was calculated as $866,250. The development expenses were estimated at 25%, reducing the value of the land to $664,688. The absorption rate, which factors into the equation the time to sell the parcels, was determined to be three years, therefore establishing $221,563 as the average annual amount of land value. The present value factor was determined to be 2.486852 (based upon financial tables), indicating a present value of the property of $551,000 or $1.66 per square foot. Using the cost approach analysis, claimants' appraiser added a value for two buildings upon the land and arrived at a total value of $584,500 before appropriation.

---

[*] Other contiguous property owned by claimants has been designated wetlands by the Department of Environmental Conservation. Both appraisers agree that the value of the wetlands was not substantially changed by the appropriation.

Using the same analysis upon comparison of similar parcels after appropriation, which resulted in a reduction of the depth of each of the seven sites, claimants' appraiser established a land value of $429,000 plus a value of $25,000 for the two buildings, totaling a $454,000 after appropriation value. Therefore, the total damages were calculated to be over $130,000, with $70,213 as direct damages and $60,192 as consequential damages.

The State's appraiser found that the total parcel should be divided into three subdivisions: parcel A being 2.41 commercial acreage on the eastern portion of the land, parcel B being 4.09 commercial acreage on the western portion of the land, and parcel C the remaining marsh area, the best use of which would be recreational purposes. By using a comparable sales analysis, the State's appraiser determined that parcel A had a before appropriation value of $210,000, based upon a frontage foot value of $300. Similarly, he found that parcel B had a before appropriation value of $159,000, based upon a $300 per frontage foot value, and parcel C had a before appropriation value of $9,650, based upon $200 per acre. The land improvements were estimated at $23,900, making the total before appropriation value $402,550. After appropriation, the State's appraiser felt that only parcel A had a decrease in frontage foot value, from $300 to $200. Therefore, the total value of the property was reduced to $330,800 and the value of the buildings decreased to $20,200, resulting in an after appropriation value of $351,000. Therefore, total damage was determined to be $51,550 with $2,800 representing indirect damage.

The Court of Claims adopted claimants' analysis, except that it reduced site No. 4 to a before appropriation value of $20,000, and an after appropriation value of $10,000. The court then divided $551,000, the after appropriation value, by $866,250, the before appropriation value, and arrived at 62.172% as the percentage of gross sales price. This percentage reduced the gross sales price from $800,000 to a final before appropriation value of $497,376. Utilizing the same method, an after appropriation value was determined to be $409,056. Damages were calculated to be $88,320. Since claimants' figures did not include land improvements, the Court of Claims accepted the State's figure of $3,700 and held the total amount to be $92,020 with interest. We affirm.

The State's contention that the land affected by the appropriation was raw and undeveloped and that, therefore, the Court of Claims erred in accepting a valuation method based upon its worth if commercially subdivided is without merit. Raw and undeveloped land indicates that there are no improvements

made on the property. Here, claimants had been placing fill on the land so as to utilize it for commercial use. Also, claimants had erected two buildings which were leased, and there were water, sewer and electric power services readily available. We have stated that a distinction between raw acreage and a subdivision value should not be too tightly drawn (*see, Pelino v State of New York,* 50 AD2d 656).

We also feel that considering the topography of the land affected by the appropriation, subdividing the property into seven sites was proper. Such a subdivision enhanced the value of the individual sites without unduly inflating the gross value of the property as a whole (*see, Valley Stream Lawns v State of New York,* 9 AD2d 149, 152). Claimants are entitled to the difference between the property's before and after appropriated value (*see, Donaloio v State of New York,* 99 AD2d 335, *affd* 64 NY2d 811).

Judgment affirmed, without costs. Mahoney, P. J., Kane, Casey and Weiss, JJ., concur.