■ In the Matter of the Acquisition of Real Property by NIAGARA MOHAWK POWER CORPORATION, Appellant-Respondent. DONALD W. PERYEA et al., Respondents-Appellants.— Weiss, J. Cross appeals from a judgment of the Supreme Court at Trial Term (Dier, J.), entered October 5, 1984 in Essex County, which, in a proceeding pursuant to EDPL 402, determined the compensation due claimants as a result of petitioner's acquisition of real property.

The factual background for this condemnation proceeding is set forth in our initial decision in *Matter of Niagara Mohawk Power Corp. v Peryea* (102 AD2d 986). When this matter again came before us following a nonjury trial in which claimants were awarded the sum of $50,000, we withheld decision and remitted for further findings by Trial Term (114 AD2d 542). Supplemental findings have now been made and the appeal has been resubmitted. Upon review of the record and these additional findings, it is apparent that certain adjustments in the award must be made.

Initially, we note that this taking concerns a permanent easement for the construction and operation of a 115 kilovolt electric transmission line with a width of 60 feet over approximately 2.52 acres of claimants' property; the right to remove any obstructions within a 30-foot range on both sides of the 60-foot strip; rights of ingress and egress over claimants' existing roads; and three easements for guy wires adjacent to the easement area. Trial Term reasonably resolved the factual dispute between appraisers as to the highest and best use of the property, which was divided into four specific areas *(see,*

*County of Columbia v Ostrander,* 33 AD2d 973). As to commercial property, claimants' appraiser, Paul V. Wicker, Jr., measured 20.15 acres on either side of Route 86 and valued that land at $32,670 per acre. Petitioner's appraiser, Herbert D. Putman, measured 67 acres on either side of Route 86 and valued that property at $2,800 per acre. Although the respective appraisals present a wide disparity in size and value, we find Trial Term's acceptance of the Wicker valuation supported in the record. This report reasonably limited the commercial acreage to the area fronting on each side of Route 86, the most advantageous use of which was recognized as being smaller commercial lots *(see, Akey v State of New York,* 108 AD2d 963, 965-966). As such, we find no impropriety in the comparable sales utilized, comprised of similarly situated but smaller parcels. The court's per acre valuation of $32,670 is within the range of the expert testimony and should not be disturbed *(see, Taccone v State of New York,* 92 AD2d 632, 633).

Next, Trial Term properly classified the land to be used for mobile home sites. While the Wicker appraisal noted that some 34.55 acres were zoned for mobile home use, it gave specific value to only the six acres upon which 36 mobile home sites had been approved. Specifically, the report valued the 16 improved sites at $4,000 each and the 20 unimproved sites at $1,800 each. The Putman appraisal focused on the six acres currently being used and valued each mobile home site at $1,635. The court's acceptance of the Putman analysis was clearly within reason, giving this area a total before-taking value of $58,860. We further find the court's classification of the 60 acres north of the trailer park and the 110.3 acres south of this area as recreational property with a per acre value of $900 to be well within the range of expert testimony presented. Taken together, the court appropriately found a before-taking value of $870,430.50.

Utilizing these values, Trial Term fixed direct damages at $26,292.50. Broken down, this amount represents the full value of (1) .37 acre of commercial property ($12,087.90) and 2.15 acres of recreational property ($1,935) over which the easement extends; (2) .09 acre of recreational property for the placement of guy wires ($81); (3) ingress and egress rights over an existing road ($468); (4) the right to remove trees within and adjacent to the easement areas ($275.60); and (5) the complete devaluation of seven mobile home sites ($11,445). Consequential damages were also assessed in the amount of $23,707.50, representing a 50% diminution in value of the 29

remaining mobile home sites. Notably, the court did not award damages for loss of access. In sum, upon remittal, Trial Term reaffirmed its award of $50,000 in damages, less the amount already paid.

Petitioner maintains that Trial Term erred in evaluating the damages attributable to the direct easement takings. We agree. In our view, the easement areas and the seven mobile home sites directly affected by the easement were not rendered entirely valueless, as assumed by the court, but retained at least 10% of their before-taking value *(see, Gustafson v State of New York,* 76 Misc 2d 260, 265-266, *affd* 56 AD2d 695; *see also, Lorig v State of New York,* 58 AD2d 734, *appeal dismissed* 42 NY2d 1101, *lv denied* 43 NY2d 641). After an appropriate adjustment to reflect this percentage of retained value (.37 acre commercial [$10,879.11]; a total of 2.24 acres recreational [$1,814.40]; and seven mobile home sites [$10,300.50]), the total direct damages attributable to the taking are $23,737.61. This figure leaves undisturbed and includes the court's award regarding ingress and egress rights ($468) and the right to remove trees ($275.60).

We further find that claimants failed to meet their burden of establishing an evidentiary basis for the award of consequential damages *(see, Mil-Pine Plaza v State of New York,* 72 AD2d 460, 464). In the instance of a partial taking, consequential damages may arise from the use of the parcel taken *(see, Williams v State of New York,* 90 AD2d 882, 883). The mere presence of an electric power transmission line, however, does not cause a consequential loss *(see, Miller v State of New York,* 117 Misc 2d 444, 452). To recover, claimants were required to present a viable analysis of comparable market factors demonstrating an actual decrease in market value *(supra; see, Nature Conservancy v State of New York,* 41 AD2d 782). Here, claimants' appraiser opined that all 20 of the unimproved mobile home lots were rendered valueless and the remaining 16 lots devalued by 20% due to the presence of the power lines. This conclusion, however, was admittedly not the result of an empirical analysis of existing market conditions, but was based on the appraiser's personal and professional opinion. Such proof falls far short of the mark *(see, Miller v State of New York, supra),* and Trial Term did not adopt this valuation. Instead, the court determined that 29 of the mobile home sites sustained a 50% reduction in value. Besides being outside the range of expert testimony on this issue, the court's damage assessment lacks a viable evidentiary basis. Moreover, petitioner's appraiser opined that the power lines did not

negatively influence the market value of the property. Therefore, we cannot sustain the award for consequential damages.

Finally, Trial Term properly determined that claimants were not entitled to damages for loss of access. At trial, petitioner expressly offered to confirm that claimants would continue to enjoy free and, generally, unrestricted use of their property. This explicit reservation of access belies any compensable infringement (see, Clark v State of New York, 20 AD2d 182, affd 15 NY2d 990; cf. Kravec v State of New York, 40 NY2d 1060). Any future interference would simply give rise to an action for a de facto taking (see, Lorig v State of New York, 58 AD2d 734, 735, supra).

Judgment modified, on the law and the facts, without costs, by reversing so much thereof as awarded $26,292.50 in direct damages and $23,707.50 in consequential damages; award for direct damages reduced to $23,737.61 and award for consequential damages reduced to zero, with appropriate interest thereon; and, as so modified, affirmed. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.