■ In the Matter of the Acquisition of Real Property by the County of Schenectady. County of Schenectady, Respondent; Richard Pahl, Appellant. [599 NYS2d 674] —Mahoney, J. Appeal from a judgment of the Supreme Court (Doran, J.), entered February 5, 1992 in Schenectady County, which, in a proceeding pursuant to EDPL article 5, determined the compensation due claimant as a result of petitioner's acquisition of real property.

Claimant is the owner of a 13.5-acre, "L"-shaped tract of land located on the north side of Freeman's Bridge Road in Schenectady County and near the County Airport. Because of its odd shape, the property only has a small amount of frontage on Freeman's Bridge Road; the bulk of the acreage extends easterly behind numerous smaller lots adjacent to the

road. This easterly portion is affected further by the presence of the Boston and Maine Railroad which cuts through it diagonally, rendering the most easterly 8.8 acres totally land-locked. Claimant obtains access to this land via a private, on-premises dirt road that crosses the railroad tracks and has a prescriptive easement over the portion of the road which crosses the railroad's land. The front portion of the property is in a general business zone; the rear of the property, including the most easterly 8.8 acres, is zoned industrial.

In 1989, petitioner began implementation of a Federally mandated "Runway Alignment Lights System Project" designed to improve runway approach visibility at the airport. In conjunction therewith, the County Legislature authorized the taking, by eminent domain, of small parcels of property and avigation easements from four nearby landowners for the purpose of installing light poles. One of the affected landowners was claimant. As laid out, the plan required the fee taking of two small portions of claimant's land, one $85 \times 290 \times 50 \times 239$ strip, another $2 \times 24 \times 24 \times 14$ quadrilateral piece (hereinafter the fee interests) and a 2.93-acre avigation easement.

In due course, condemnation proceedings were commenced by petitioner. Following joinder of issue, the parties entered into an advance payment agreement wherein claimant agreed to accept $10,600 for the condemned property ($7,600 for the fee interests and $3,000 for the easement), albeit subject to the retained right to make a subsequent claim for additional compensation (see, EDPL 304 [A] [3]). Following execution of the deed and receipt of payment, relations deteriorated. Claimant, who became aware that the appropriations effectively landlocked a 0.62-acre portion of his land and reduced a portion of the dirt road in the area near the railroad tracks from 10 feet to an impassable 6.7 feet, thus denying him meaningful access to the most easterly 8.8 acres of his land which he used as a sewage disposal field in connection with his business, rejected petitioner's proffer of deeded rights of way and sought $226,080 in consequential damages. Claimant also sought additional direct compensation for the fee interests based upon an appraiser's report which valued the fee interests alone at $10,640 as of the date of taking, $3,040 greater than the $7,600 originally paid.

During trial, petitioner conceded that claimant's appraisal accurately reflected the fair market value of the fee interests with the result that only the consequential damages claim was litigated. The gravamen of petitioner's position in this regard

was that claimant suffered no damage because he still had access and, in any event, failed to mitigate damages by rejecting petitioner's proffered deeds conveying a right-of-way over the fee interests appropriated. At the conclusion of trial Supreme Court denied claimant's consequential damage claim, concluding that access could continue by moving the dirt road slightly to the southeast and, in accordance with petitioner's stipulation, entered judgment for the $3,040 difference in the direct value of the fee interests (hereinafter the February 5, 1992 judgment). Thereafter, claimant moved pursuant to EDPL 701 for a $15,900 additional allowance. Following denial of that motion (hereinafter the February 19, 1992 order), claimant appealed.

Initially, we note that while claimant seeks review of both the February 5, 1992 judgment and the February 19, 1992 order, inasmuch as he has not filed a notice of appeal from the latter order, the order does not affect the final judgment so as to be brought up for review with it (see, CPLR 5501 [a] [1]) and is not a subsequent order reviewable under CPLR 5517, we lack jurisdiction to consider his arguments relative thereto. Accordingly, we will confine our review to the February 5, 1992 judgment.

In this regard, it is now well established that where, as a result of the condemnation of a person's property, he or she is denied legal access to all or a portion thereof and the original appropriation contains no express reservation of a right of access, the landowner is not required to accept subsequent proffers of deeded rights of way made by the appropriating agency and is entitled to receive, as consequential or severance damages, the damage done to the property not taken, that is, damages for loss of the right to enter and exit the land not appropriated (see, e.g., Pollak v State of New York, 41 NY2d 909, 910; Kravec v State of New York, 40 NY2d 1060, 1062). Moreover, inasmuch as the amount of damages to which a landowner is entitled as the result of an appropriation is measured and fixed at the time of the taking, subsequent remedial measures attempted by the condemnee, such as offering a right of access after the fact or otherwise limiting its original appropriation after the original taking, do not operate to reduce its damages (see, e.g., Wolfe v State of New York, 22 NY2d 292, 295-297; B & B Food Corp. v State of New York, 96 AD2d 893).

Here, claimant's entitlement to damages for loss of access is evident from a reading of the record. The uncontroverted testimony at trial established that a 0.62-acre portion of

claimant's property has been rendered completely landlocked by one of the fee interests appropriated. While, concededly, access to the easterly 8.8 acres was not *completely* cut off by the second fee-interest appropriation, because it reduced the width of the access road to 6.7 feet which is insufficient to permit passage of claimant's vehicles and, in practical effect, eliminated all meaningful access for purposes consistent with the property's industrial zoning, there can be little doubt that such diminution in access, because it is the functional equivalent of access denial, is compensable *(see, Rider v State of New York,* 192 AD2d 983). Moreover, contrary to Supreme Court's conclusion, the record testimony clearly establishes that the dirt road cannot be moved or widened so as to accommodate claimant's sewage disposal vehicles without encroaching upon others' property. Accordingly, upon submission of sufficient evidentiary proof, claimant is entitled to damages for lost and diminished access in an amount representing the diminution in market value of the affected property as a result of the appropriation *(see, e.g., Donaloio v State of New York,* 99 AD2d 335, 338, *affd* 64 NY2d 811; *Chemung Canal Trust Co. v State of New York,* 90 AD2d 889; *Williams v State of New York,* 90 AD2d 882, 883).*

While Supreme Court did not make a compensation award because of its conclusion that claimant was not denied access as a result of the taking, in view of our disagreement with that proposition the issue of just compensation is now squarely presented for determination. Moreover, because we believe that accurate measurement of damages is permissible upon the record before us and no additional fact-finding hearings are necessary *(cf., Williams v State of New York, supra,* at 884), this issue can be resolved directly upon appeal.

In making this determination, we begin with the proposition that while the court is not concluded by the figures presented by the parties' appraisers or bound to choose between them, inasmuch as it does not make its own independent appraisal, it must necessarily rely upon the submitted reports *(supra,* at 884). Here, claimant's expert testified that prior to the appropriation the highest and best use of the affected acreage was for light industrial or commercial use and, based upon comparable sales and conditions prevailing at the time, had a

---

* Moreover, because the access problems created by the fee-interest appropriations cannot be remedied without going outside the boundary lines of the subject property, petitioner cannot invoke the "cost of cure" doctrine in mitigation of damages *(see, Donaloio v State of New York, supra,* at 339; *Matter of County of Suffolk [Arved, Inc.],* 63 AD2d 673, 674).

market value of $28,000 per acre. Following the taking, however, and as a direct result of the decreased width of the roadway to the point where entry by motor vehicles could not be legally accomplished, use of the easterly 8.8 acres for industrial purposes was no longer feasible. Having become essentially landlocked, the expert produced documentary evidence that its highest and best use was reduced to assemblage with a concomitant reduction in value to $4,000 per acre, again based upon comparable sales at the time. While petitioner did not controvert claimant's evidence directly, choosing instead to center its defense upon other issues, it did submit into evidence a copy of an appraisal done on its behalf which indicated a before-taking value of the property at $18,000 per acre. However, no evidence was presented by petitioner regarding the after-taking value as a result of nonaccess.

In view of the fact that the comparable sales used to establish the $18,000 per acre before-taking value occurred 4 to 7 years prior to the 1989 acquisition date and the sales supporting claimant's $28,000 per acre figure were much more recent, one of which occurred only two months prior, was on the same street, had the same acreage and same split zoning, we are inclined to adopt claimant's $28,000 per acre figure as the before-taking value, i.e., $378,000 total value (13.5 acres × $28,000/acre). Accepting the $4,000 per acre post-taking value of the 9.42 acres which were rendered legally nonaccessible by virtue of the acquisition, inasmuch as that figure is uncontroverted by petitioner, results in a $159,780 post-taking valuation of the entire 13.5 acres. The difference in these two figures is $218,220. When that figure is reduced by the $10,640 value of the fee interests appropriated (i.e., 0.38 acre × $28,000/acre), the net diminution in value to the nonappropriated property due to lack of access is $207,580. Accordingly, claimant is entitled to judgment for consequential damages in that amount.

Weiss, P. J., Levine and Mercure, JJ., concur. Ordered that the judgment is modified, on the law and the facts, with costs to claimant, by awarding claimant an additional sum of $207,580 for consequential damages for loss of access to 9.42 acres of his land, and, as so modified, affirmed.