■ In the Matter of COUNTY OF SUFFOLK, Respondent, v JOHN KALIMNIOS et al., Appellants. [712 NYS2d 630] —In an eminent domain proceeding, the claimants appeal, as limited by their brief, from stated portions of an order and judgment (one paper) of the Supreme Court, Suffolk County (Oshrin, J.), dated January 20, 1999, which, after a nonjury trial, *inter alia,* awarded them the principal sum of $3,200,000 for the permanent appropriation of their property.

Ordered that the order and judgment is reversed insofar as appealed from, on the law, and a new trial is granted, with costs to abide the event.

On January 9, 1992, the County of Suffolk (hereinafter the County) appropriated approximately 272 acres of vacant land owned by the appellants in Southampton. This proceeding concerns the just and fair compensation for the taking. After a nonjury trial, the Supreme Court awarded the claimants $3,200,000. We reverse and remit the matter for a new trial.

A property owner must be paid just and fair compensation for any property taken by exercise of the power of eminent domain (*see, Yaphank Dev. Co. v County of Suffolk,* 203 AD2d 280). In general, this is the fair market value of the property at its best and highest use (*see, Matter of County of Suffolk [C.J. Van Bourgondien Inc.],* 47 NY2d 507; *Matter of Rochester Urban Renewal Agency [Patchen Post],* 45 NY2d 1). The parties agreed that the best and highest use of the subject property would be for residential development. Accordingly, the parties employed a development cost analysis in valuing the property, and many aspects of the valuation process were settled by stipulation. However, the parties contested the value to be placed on the 53 building lots into which the property was to be subdivided. Each party's expert valued the lots based on the adjusted sales price of purported comparable building lots in and around the area, but their respective conclusions as to value diverged greatly. The Supreme Court rejected the opinions of both parties' experts as to the value of the lots and rendered an independent conclusion as to the value. In so doing, the Supreme Court erred.

The claimants' expert testified that the potential for develop-

ing the subject property as an exclusive gated community rendered the subject lots comparable to lots located in highly desirable and already-established areas in the vicinity of Southampton and Bridgehampton. We agree with the Supreme Court that the record does not support that conclusion, and that the claimants' expert should have adjusted the sales prices of the comparables to reflect the differences between the subject property and these lots. Nor does the record support the conclusion of the claimants' expert that property in the immediate area of the subject property was suffering from "condemnation blight", i.e., the probability of some restrictions as to the use of the property or any other general infirmity that would render building lots therein unsuitable for comparison. Finally, in rendering his opinion, the claimants' expert did not consider the local school district or the property taxes. Thus, the Supreme Court did not err in rejecting the valuation of the claimants' expert.

Similarly, although the Supreme Court properly accepted various aspects of the expert testimony proffered by the County in valuing the subject building lots, it did not err in rejecting the conclusions of the County's expert. The comparables proffered by the County's expert were mostly in the immediate area of the subject property, and his appraisal report was detailed as to the nature of such properties and the basis for his adjustments to the sale prices of the properties. However, the County's expert did not adjust for the adverse effect of bankruptcy/foreclosure proceedings on several comparables from a development known as Red Creek. Thus, the Supreme Court did not err in rejecting the valuation of the County's expert.

Upon rejecting the parties' proffered valuations, the Supreme Court did not order new valuations. Instead, it accepted the testimony of the County's expert that building lots in Red Creek were suitable for use as comparables. The Supreme Court averaged the purported sales price of three such lots sold over a period of approximately five years in reaching its conclusion as to the value to be placed on the subject building lots. This was error.

Other than the testimony as to the purported sale prices of the three aforementioned Red Creek lots, offered as a witness's recollection from an unidentified source, there is no evidence in the record as to the characteristics of such lots. There is no testimony, expert or otherwise, as to the proper adjustments, if any, to be made to such sale prices. Moreover, there is no evidence upon which the Supreme Court might have otherwise

rendered its conclusions. The Supreme Court's determination is not supported by evidence in the record, or adequately explained (*cf., Matter of City of New York [Reiss]*, 55 NY2d 885; *Matter of City of New York [A. & W. Realty Corp.]*, 1 NY2d 428; *Estate of Dresner v State of New York*, 262 AD2d 274; *Donaloio v State of New York*, 99 AD2d 335, *affd* 64 NY2d 811). Accordingly, as the record is insufficient to render a determination as to the value of the subject building lots, a new trial is warranted (*see, Mally v State of New York*, 28 AD2d 1083).

The claimants' remaining contentions lack merit, are academic, or need not be reached in light of our determination. Bracken, J. P., Ritter, Altman and Feuerstein, JJ., concur.