[885 NE2d 185, 855 NYS2d 421]

Brian R. McCurdy, Respondent, v State of New York, Appellant. (Claim No. 101492.)

Argued and submitted February 12, 2008; decided March 20, 2008

## POINTS OF COUNSEL

*Andrew M. Cuomo, Attorney General,* Albany (*Michael S. Buskus, Barbara D. Underwood, Andrew D. Bing* and *Peter H. Schiff* of counsel), for appellant. Temporary easements of road frontage that result in only brief intervals of obstruction of interior acreage should be valued on the basis of rental value of the easement for its duration, plus the rental value of the interior acreage only when actual obstruction occurs. (*Village of Highland Falls v State of New York,* 44 NY2d 505; *United States v General Motors Corp.,* 323 US 373; *Spencer v State of New York,* 206 App Div 376; *Mazzeo v State of New York,* 58 Misc 2d 186; *Pomeroy v State of New York,* 18 Misc 2d 377; *Matter of County of Nassau [Minkin],* 148 AD2d 533; *Spinner v State of New York,* 4 AD2d 987; *Great Atl. & Pac. Tea Co. v State of New York,* 22 NY2d 75; *Garfield Homes v State of New York,* 44 Misc 2d 738; *Kauffman v State of New York,* 43 AD2d 1004, 36 NY2d 745.)

*Flower, Medalie & Markowitz,* Bay Shore (*Donald Markowitz* of counsel), for respondent. The State of New York's appeal is based on a misapplication of this Court's decision in *Village of Highland Falls v State of New York* (44 NY2d 505 [1978]). (*Matter of Kadlec v State of New York,* 264 AD2d 420; *Spinner v State of New York,* 4 AD2d 987; *Morton v State of New York,* 8 AD2d 49, 6 NY2d 993.)

## OPINION OF THE COURT

READ, J.

This appeal calls upon us to decide the proper measure of damages when a condemnor takes a temporary easement that encumbers a vacant parcel's entire highway frontage. We hold that damages in this case should be awarded in line with the formula set out in *Village of Highland Falls v State of New York* (44 NY2d 505 [1978])—i.e., the rental value of the land encompassed within the temporary easement for so long as the easement is in effect plus, as consequential damages, the rental value of the parcel's unencumbered interior acreage for any period of time when highway access was not possible by virtue of

the easement's use. A condemnee is entitled to consequential damages comprising the rental value of the parcel's unencumbered interior acreage for the easement's duration only if the condemnor does not meet its burden of proving the interval of actual obstruction, or the condemnee establishes that the mere existence of the temporary easement did, in fact, impede sale or development of the property for its highest and best use. Here, the condemnor, the State of New York, met its burden, while claimant Brian R. McCurdy, the condemnee, did not show that the temporary easement thwarted the highest and best use of his property. The award must therefore be vacated, and, upon remittal, the Court of Claims should calculate consequential damages and interest in conformity with our decision in *Village of Highland Falls*.

## I.

In 1980, claimant purchased a vacant, unimproved parcel of land in the Town of Islip. The parcel, comprising 10,888 square feet (0.25 acres) and shaped like a parallelogram, is 150 feet deep with 75 feet of frontage on the north side of the Montauk Highway (State Route 27A), a heavily traveled four-lane east/west thoroughfare. The property is a cleared, level, grassy plot at road grade, and is zoned for residential use; it neighbors a comparably sized and shaped parcel located on the corner of the Montauk Highway and Pease Lane, a north/south road. Claimant is a dentist whose office is located in a two-story wood frame structure on this adjoining parcel.

In April 1999, the State of New York, in connection with a highway reconstruction project, permanently appropriated a 71-square-foot slice of claimant's land abutting the Montauk Highway. This slice, which was about 2.5 feet deep at the southeastern corner of claimant's parcel, tapered to meet the property line midway along its border with the highway. For grading purposes, the State also acquired a temporary easement over a 679-square-foot strip of land that spanned the entire front of the parcel to a depth of roughly 10 feet. The temporary easement read as follows:

"TEMPORARY EASEMENT FOR GRADING

"A temporary easement to be exercised in, on and over the property above delineated for the purpose of grading for use and exercisable during the construction of the highway and terminating upon

approval of the completed work, unless sooner terminated or deemed no longer necessary for highway purposes and released by the Commissioner of Transportation. . . .

"RESERVING, however, to the owner of any right, title, or interest in and to the property mapped above and such owner's successors or assigns, the right of using said property and such use shall not be further limited or restricted under this easement beyond that which is necessary to effectuate its purposes for, and as established by, the construction, and as so constructed, the maintenance, of the herein identified project."

These permanent and temporary takings allowed the State to repave the highway; install concrete curbing, a sidewalk, a driveway apron and a decorative brick utility strip; and relocate a fire hydrant.

Claimant timely commenced a proceeding in the Court of Claims to seek damages resulting from the partial appropriation and the taking of the temporary easement. At trial, the parties stipulated that the damages for the permanent taking in fee amounted to $850; the land value of the property both before and after the appropriation was $8.75 per square foot; the vesting date for both the taking in fee and the temporary easement was April 7, 1999; the temporary easement terminated on February 1, 2001; and claimant owned the parcel on the vesting and expiration dates. They disputed only how to calculate consequential damages for the temporary easement. Claimant contended that, in light of the Appellate Division's decision in *Matter of Kadlec v State of New York* (264 AD2d 420 [2d Dept 1999]), which involved an identically worded temporary easement encumbering a vacant parcel's entire highway frontage, the State was required to pay the rental value for the whole parcel for the full period of time the easement was in effect, regardless of whether or for how long access to the Montauk Highway was actually obstructed; the State countered that it was obligated to award consequential damages for the parcel's unencumbered interior acreage only for those days when access was, in fact, blocked.

Claimant's appraiser testified that the highest and best use of the property was to develop it "as a single tenant medical office building which would be in character with the surrounding properties" because "[a]s other parcels have been rezoned,

there's been a transition in the neighborhood from residen[ces] to GST zoning which would permit offices": there was a hospital nearby and "many of the properties along Montauk Highway for a half a mile east and west [had been] improved with converted homes and one-story office and two-story office buildings, attended by medical uses." Claimant's appraiser opined that the Town would likely grant a request for the necessary rezoning; however, so long as the State's temporary easement was in place "a developer would not be interested in developing [the subject] property . . . because they [had] absolutely no way to enter into [it]" since "[t]here was no access via any other means . . . than [the] Montauk Highway." While development of the parcel as a single-tenant medical office building would concededly also require the Town to approve a variance from the zoning ordinance's minimum yard width (100 feet), claimant's appraiser offered no opinion as to the likelihood of this happening; when pressed, she acknowledged that her report cited no examples where the owner of a parcel had obtained relief from both the relevant zoning and yard-width requirements. She testified that 12% was the proper rate of return on the property's land value for purposes of calculating rental value.

The State called an employee of the New York State Department of Transportation (DOT), who testified that, upon searching DOT's records from 1983 forward, she found no highway work permit authorizing claimant to construct an entrance connecting the parcel to the Montauk Highway (see Highway Law § 52 [generally requiring a permit prior to construction or improvement within a state highway right-of-way]). In addition, the veteran DOT engineer in charge of the project testified that claimant's parcel had been, in fact, physically accessible from the Montauk Highway while the temporary easement was in effect except for a period of 7 to 10 days. Further, claimant could have obtained access upon request during those 7 to 10 days since DOT would have accommodated him "[b]y staging construction so that only a portion of the frontage of the property [was] encumbered at any one time." Finally, the DOT engineer testified that equipment and materials were never stored on the temporary easement because this would have created "a safety hazard," and the contractor maintained a staging area elsewhere.

Next, portions of claimant's deposition testimony were read into the record. These excerpts established that claimant did

not own the property on the corner of Pease Lane and the Montauk Highway where his dental office was located; that "[d]uring the entire time . . . [he] owned" the subject parcel, there was never a structure on it; that "in conjunction with [his] dental office[ ]" cars were "sometimes" parked on the parcel, but these cars "enter[ed] off Pease Lane" rather than from the Montauk Highway; that he had never "applied to any governmental agency for a permit to develop [the parcel]"; and that, prior to the taking and the acquisition of the temporary easement, he did not "make it a custom and habit to drive onto the [parcel] from [the] Montauk Highway."

Finally, the State called an appraiser to rebut claimant's appraiser's testimony. He pointed out that the temporary easement expressly reserved to claimant the right to use the property except as necessary for DOT to construct and maintain the project. In addition, he noted that there was no evidence of denial of access, or of any use of the easement other than for grading. Based upon these considerations, the State's appraiser opined that claimant's remainder property was available for development during the temporary easement's term. In response to questioning by the trial court, however, he conceded that "[i]f there was a denial of access during the construction period, then . . . that would negatively impact the property."

In its subsequent decision, the Court of Claims accepted claimant's theory of consequential damages, and so awarded him the rental value of the entire remainder property for the easement's duration, plus statutory interest. The trial court's decision was based entirely on *Kadlec*, which he interpreted as affording no leeway to favor the State's "fact-based analysis (i.e. Claimant never attempted to develop the subject property or apply for a highway work permit) or the opinion of its expert that the temporary easement did not prevent Claimant from accessing the subject." To the contrary, "where as here—and as in Kadlec—a subject's only access to a public roadway is compromised by an easement running the entire length of that frontage, the Court *must* find that access is denied and development impaired, resulting in a de facto taking" (emphasis added). The Appellate Division subsequently affirmed on the rationale that "[t]he record supports . . . that the temporary easement . . . rendered the claimant's remaining property inaccessible and, thus, unavailable for development for the period of time that the temporary easement was in existence" (*McCurdy v State of New York*, 37 AD3d 779, 781 [2d Dept 2007]). We subsequently granted the State leave to appeal.

## II.

In *Village of Highland Falls*, the Court of Claims awarded the rental value of the claimant's property for the entire duration of the temporary easement (the precise measure adopted by the lower courts in this case), but the Appellate Division modified and reduced the award to the rental value of the claimant's property for the three days in which its use was actually interrupted by the State's easement (the precise measure of damages urged by the State here). The property in question was improved by a municipal water treatment facility, which occupied a portion of the tract subject to the temporary easement.

We affirmed the Appellate Division, stating that

> "[t]he general rule is that property taken in eminent domain is to be valued prospectively from the time of appropriation . . . .

> "When a temporary easement, contemplating only incidental and contingent use, is appropriated, rather than a permanent interest, however, it may be somewhat more acceptable to permit the use of hindsight in valuing the interest taken. *If the condemnation award is made after the easement has expired, it makes practical sense to compute the property owner's actual damages rather than indulging in speculation on the measure of damages claimant could have contemplated at the time of taking*" (44 NY2d at 508 [citations omitted and emphasis added]).

In adopting a retrospective measure of damages, we observed that "[i]t has been held by this court . . . that compensation need not be paid for the State's taking of a temporary easement when there is no actual interference with the property owner's use of his property" (44 NY2d at 507, citing *Great Atl. & Pac. Tea Co. v State of New York*, 22 NY2d 75, 87 [1968]). We found "insufficient reason for abandoning [the above] precedent" where a three-year-long temporary easement connected to highway improvements gave the State "the legal right to exercise some sort of dominion throughout the period of the easement," but, in fact, the claimant's "operation of the water treatment facility was rarely significantly interrupted" (44 NY2d at 507, 508). Similarly, in this case (and unlike the situation in *Kadlec*), the State proved the interval of actual obstruction; i.e., it is undisputed that highway access to claimant's

parcel was obstructed for only 7 to 10 days (and the State concedes 10 days for purposes of the appeal) during the 666 days the easement was in effect (from April 7, 1999 to February 1, 2001).

We added a caveat in *Village of Highland Falls*, however, commenting that

"[n]ot to be ignored . . . although not always measurable, is the damage to a property owner caused by uncertainty regarding the condemnor's intentions. A temporary easement that leaves the property owner under constant threat that his use of the property may be curtailed or stopped is likely to affect business or other financial decisions even if use is never interrupted in fact. The threat imposed by the condemnor's legal right to occupy may be almost as damaging as the actual occupation of the property. Damages caused by such uncertainty, difficult as they may be to measure, should generally be compensable" (44 NY2d at 509).

Claimant implicitly relies on this dictum. He contends that the temporary easement rendered his property unmarketable and undevelopable for its highest and best use as a single-tenant medical office building because it cut off highway access for an indefinite and unspecified period of time. This argument, however, ignores the easement's wording, which reserved to claimant a concurrent right of access. More importantly, claimant failed to show that the temporary easement interfered with the parcel's marketability or development in more than a conjectural sense. Although claimant's appraiser opined that claimant likely could have obtained the zoning change needed to allow for commercial development, there is no evidence that he actually took any steps to do so. In addition, claimant never applied for a highway work permit to construct an entrance connecting the parcel to the Montauk Highway, which would likewise have been some evidence that he intended to market or develop the property; nor did he apply for the yard-width variance necessary for commercial development. Indeed, claimant's appraiser's testimony casts doubt on whether relief might be secured from both the zoning and yard-width requirements applicable to the lot, which—unlike the examples in her report—had frontage on only one rather than two highways. In short, the record is devoid of any concrete evidence that claimant actually attempted to sell or develop—or even contemplated selling

or developing—the parcel, which was apparently only used occasionally as an auxiliary parking area for his dental office, and was entered from the adjacent parcel on the corner of Pease Lane and the Montauk Highway where his dental office was located. While prospective uncertainty might have a real effect on the sale value or development potential of vacant land, there is no evidence in this record from which a factfinder might conclude that claimant was, in fact, planning to sell or develop his property.

Accordingly, the order of the Appellate Division should be modified, with costs to the State, by remitting to the Court of Claims for further proceedings in accordance with this opinion and, as so modified, affirmed.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur.

Order modified, etc.