■ In the Matter of the Acquisition of Easements by CENTRAL NEW YORK OIL AND GAS COMPANY, L.L.C., Respondent-Appellant. PORTO BAGEL, INC., Appellant-Respondent. [964 NYS2d 293]—

Garry, J. Cross appeals from a judgment of the Supreme Court (O'Shea, J.), entered September 20, 2011 in Tioga County, which, in a proceeding pursuant to EDPL articles 4 and 5, among other things, determined the compensation due claimant as a result of petitioner's acquisition of certain easements.

Through eminent domain, petitioner acquired a permanent

easement to construct and maintain a gas pipeline across two parcels of land owned by claimant in the Town of Owego, Tioga County, as well as two temporary easements to facilitate the construction. The first of claimant's parcels (hereinafter tract 27) comprises roughly four acres, with a northern boundary that abuts State Route 434 and a southern boundary that abuts claimant's second 67-acre parcel (hereinafter tract 26). The permanent easement is approximately 50-feet wide and 2,000-feet long, running in a north/south direction from Route 434 across tract 27 close to its western boundary, and then continuing in the same direction across tract 26. This easement prohibits the construction of any "house, structure or obstruction" in the easement area, among other things. Claimant had sought to develop these properties, but at the time of the taking, they were used primarily for recreation and were undeveloped except for a small hunting cabin and an unpaved access road that crossed the easement in two locations.

Claimant initially declined several offers from petitioner to purchase the easements and then agreed to accept $13,100 as an advance payment while reserving the right to contest the amount of compensation due (see EDPL 304 [A] [3]). Following the first two days of a nonjury trial, the trial judge (Tait, J.) recused himself. Thereafter, Supreme Court (O'Shea, J.) completed the trial, conducted a site visit, and concluded that the advance payment had adequately compensated claimant for the permanent easement, denied compensation for loss of trees and the temporary easements, and awarded "cost to cure" damages for removal of tree stumps and restoration of the access road. Claimant appeals and petitioner cross-appeals.

Claimant first contends that its motion to strike the appraisal report submitted by petitioner's expert should have been granted because it did not contain all of "the facts, figures and calculations by which the conclusions were reached" (22 NYCRR 202.59 [g] [2]; see EDPL 508; 22 NYCRR 202.61 [a] [1]; [c]). In particular, claimant contends that the report did not set forth all of the comparable sales on which its expert relied "with sufficient particularity as to permit the transaction[s] to be readily identified" and thus did not "contain a clear and concise statement of every fact that [petitioner sought] to prove in relation to those comparable properties" (22 NYCRR 202.59 [g] [2]). Petitioner's appraiser, John Miller, testified that because the easements constituted a partial taking, he could not use standard appraisal methods to quantify the resulting diminution in

value.[1] He thus devised a multistep methodology by which, after using comparable sales to determine the tracts' values before the taking, he conducted a second analysis for each tract using comparable sales of properties encumbered by utility easements. These sales are detailed in Miller's report, but in the next step of his analysis he used information not included in the report to determine a hypothetical market value for each encumbered comparable property as if there were no encumbrance—values which then formed the basis of his ultimate conclusions as to the impact of the permanent easement on the value of claimant's land. The appraisal report does not include the facts, figures or calculations by which these hypothetical values were determined, stating only that they were based, as to tract 26, on "market data contained in [Miller's] files" and as to tract 27, on "a sales comparison analysis of each [encumbered comparable] property, the details of which are retained in [Miller's] work file."

Miller testified that he conducted separate appraisals of each of the encumbered comparable properties to determine their hypothetical unencumbered values, and he confirmed that these appraisals were not included in the record. Beyond this testimony, he did not describe either the procedures he followed or the facts, figures or calculations upon which he relied. For this reason, Miller's analysis differs from that approved by this Court in *Matter of Albany County Airport Auth. (Buhrmaster)* (265 AD2d 720, 721 [1999], *lv denied* 94 NY2d 758 [2000]), in which an appraiser used a "functional utility adjustment" to evaluate the impact of an avigation easement on property near an airport and—because of a lack of local comparable sales involving such easements—relied on his experience in valuing out-of-area parcels encumbered by such easements rather than on a standard sales comparison. Although the appraiser's report failed to state the details of these out-of-area sales, this Court declined to set it aside because the basis for the appraiser's conclusions was otherwise "more than adequately set forth in both the appraisal and his trial testimony" (*id.*; *see Matter of Regency Realty Assoc., LLC v Board of Assessment Review of the Town of Malta*, 75 AD3d 950, 952 [2010]). Here, by contrast, neither Miller's report nor his testimony provides any factual support for his determinations of the hypothetical unencumbered value of the comparable properties and, thus, for his ultimate conclusions regarding the effect of the permanent easement on claimant's property.

---

1. Miller's report also noted a shortage of comparable sales of vacant tracts encumbered by utility easements.

Petitioner correctly notes that it was not required to provide "a detailed narrative in its appraisal explaining each of the adjustments made in the report" (*Matter of Bialystock & Bloom v Gleason*, 290 AD2d 607, 609 [2002]). It is a common practice to use adjustments to reconcile differences among properties in the course of arriving at their market values, and here Miller's report identified the adjustments he used as "real property rights conveyed, financing terms, conditions of sale, market conditions, location and physical characteristics." However, the hypothetical market values at issue here are not mere adjustments—they are instead the conclusions of entirely separate comparisons—and these comparisons were neither included nor described in the report.

The governing regulations establish a specificity requirement for the purpose of enabling a claimant to conduct adequate cross-examination of the appraiser (*see Matter of Golub Corporation/Price Chopper Operating Co. v Assessor of Town of Queensbury*, 282 AD2d 962, 963 [2001]; *Matter of Niagara Mohawk Power Corp. v Town of Bethlehem Assessor*, 225 AD2d 841, 843 [1996]). Here, claimant was completely unable to cross-examine Miller as to the facts, figures and calculations underlying his determinations as to the impact of the various utility easements on the encumbered comparable properties, and therefore as to the basis for his final conclusions regarding the impact of petitioner's easement on claimant's properties. Under these circumstances, the appraisal should have been stricken.[2]

Claimant's appraiser, John Havemeyer, submitted an appraisal report using a traditional "before and after" method to value the loss caused by the easements. However, Supreme Court rejected Havemeyer's report as inaccurate, finding that Havemeyer had improperly treated the partial taking resulting from the easements as a fee taking (*see Matter of Niagara Mohawk Power Corp. [Peryea]*, 118 AD2d 891, 893 [1986]; *County of Onondaga v Sargent*, 92 AD2d 743, 744 [1983], *appeal dismissed* 59 NY2d 967 [1983]), had incorrectly found that part of claimant's property was landlocked by the easement, and had relied on an assemblage between tract 27 and another parcel owned by claimant, which the court found to be speculative in view of the area's commercial development. We find no reason

---

2. We further note that Miller divided his final damage determinations into amounts identified as "direct" and "indirect" damages. These divisions appear improper as Miller's calculations were explicitly limited to direct harm caused to the encumbered portions of claimant's property, and he neither made findings as to consequential damages nor offered any rationale for the amounts he assigned to each category.

to disturb this determination, as it was well within the court's "broad discretion to accept or reject expert testimony in determining the value of condemned property" (*Matter of CNG Transmission Corp. [Green]*, 273 AD2d 726, 728 [2000]; *see ARC Machining & Plating v Dimmick*, 238 AD2d 849, 850-851 [1997]). Accordingly, there is no acceptable basis in the record to support new findings by this Court, and the matter must instead be remitted for a new trial (*see Enmac Realty Corp. v State of New York*, 38 AD2d 650, 651 [1971]).

Given this determination, the parties' remaining claims need only brief discussion. Both experts determined that claimant was entitled to damages resulting from the temporary easements—albeit in different amounts—and the record confirmed that these easements had in fact temporarily limited claimant's access to the property. However, Supreme Court made no award of damages for the temporary easements and did not explain its failure to do so. Therefore, this issue—as well as the court's unexplained failure to award damages for trees removed during the pipeline construction[3] —remains to be resolved upon remittal (*see Matter of City of New York [Reiss]*, 55 NY2d 885, 886 [1982]; *Matter of CNG Transmission Corp. [Green]*, 273 AD2d at 729; *see generally McCurdy v State of New York*, 10 NY3d 234 [2008]).

Finally, petitioner argues in its cross appeal that Supreme Court erred by awarding damages to claimant for the cost of removing stumps and restoring the access road on tract 26. Initially, as the amount of damages owed to a landowner is measured and determined as of the time of the taking, we reject petitioner's contention that it should have been permitted to repair the road itself, thus reducing claimant's damage award (*see Matter of County of Schenectady [Pahl]*, 194 AD2d 1004, 1006 [1993], *lv denied* 83 NY2d 756 [1994], 84 NY2d 806 [1994]). This amount was separately awarded because the damage to the road was not reported until the commencement of trial, after both appraisals had been completed. Therefore, the court permitted additional experts for both parties to testify as to the cost of rebuilding the damaged road and removing stumps

---

**3.** The enhancement value of trees and shrubs removed in a taking is properly considered as an element of consequential damages (*see Williams v State of New York*, 90 AD2d 882, 883 [1982]; *Cummings v State of New York*, 62 AD2d 1084, 1086 [1978], *lv denied* 44 NY2d 648 [1978], *appeal dismissed* 44 NY2d 948 [1978]). Claimant demonstrated that a large strip of trees was removed during the pipeline construction, and Havemeyer assigned a corresponding value to these trees. Petitioner's expert neither made any finding on this point nor directly disputed claimant's assessment, merely testifying that such loss in value was "tough to support."

left on claimant's property. Following a site visit, the court found that vehicular access on the former road had been completely cut off and awarded damages in the amount estimated by claimant's expert. Although this award was well-motivated, the proper measure of damages for a partial taking is the property's market value before the condemnation less the remainder following the taking, and prospective expenditures required to correct a condition resulting from a taking "are only an aid in determining the difference in the before and after value of the property" rather than a separate measure of damages (*Donaloio v State of New York*, 99 AD2d 335, 338 [1984], *affd* 64 NY2d 811 [1985]; *see Goldsmith v State of New York*, 32 AD2d 607, 607 [1969], *affd* 26 NY2d 899 [1970]). Accordingly, upon remittal, these prospective expenditures should be taken into account as part of the overall assessment of the easement's impact on the value of the property, rather than separately awarded.

Mercure, J.P., Lahtinen and McCarthy, JJ., concur. Ordered that the judgment is reversed, on the law, without costs, and matter remitted to the Supreme Court for a new trial.